IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THOMAS J. R. MOORE,               )
                    Petitioner    )
                                  )
        vs.                       )        Civil Action No. 04-1702
                                  )
DAVID DIGUGLIELMO,                )        Chief Magistrate Judge Amy Reynolds Hay
                    Respondent    )

MEMORANDUM OPINION

HAY, Chief Magistrate Judge

Thomas J.R. Moore ("Petitioner"), a state prisoner, having been convicted of, inter alia, second degree murder, i.e., felony murder while committing a burglary of an occupied home, is serving a life sentence. Petitioner shot his co-actor in the burglary. Petitioner now seeks to attack his murder and related convictions via the present habeas petition. All parties have consented to the exercise of plenary jurisdiction by the Magistrate Judge. Dkt. [50] & [54].

Because many of his issues are procedurally defaulted, they may not be addressed on the merits. As to those issues not procedurally defaulted, Petitioner fails to establish entitlement to relief under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") by failing to even argue the state courts' disposition was contrary to or an unreasonable application of Supreme Court precedents and, thus, the petition is properly dismissed.

I.      Relevant Procedural and Factual History

The Post Conviction Relief Act ("PCRA") Court summarized the facts underlying the crime and the testimony at trial as follows:

On the afternoon of May 13, 1988 at approximately 2:30 p.m. Theresa Allen and her family were at home, a split level residence located at 975 Garden City Drive, Monroeville, Pennsylvania.  Ms. Allen was spending a relatively quite afternoon in the company of her family which consisted of her brother, LaVaughn Johnson, her offspring Andre Allen, Marcus Allen, Nicole Anderson and [Nicole's son and Theresa's grandson] Dion Anderson.  Theresa was in her bedroom with her son Andre, age 6, watching television and talking on the telephone when a man came into the room and attacked her.  This individual, Douglas Baskin, informed Ms. Allen that "this is a stickup" and that he wanted all of her money and jewelry. (Trial Transcript at 47).  Young Andre alighted from his mother's room in order to enlist the aid of his uncle, LaVaughn Johnson, who was asleep elsewhere in the house.  LaVaughn Johnson stated that he was aroused by Andre who had told him that "someone was beating on Mom." (Trial Transcript at 138).  LaVaughn tried to rouse himself from his resting place only to find that someone had taped his ankles together with duct tape while he was slumbering.  (Trial Transcript at 137). LaVaughn, after freeing himself from his sticky fetters, ran up the stairs to his sister's bedroom.  En route he encountered two men.  LaVaughn tried to grab one of the men.  As he did so, the other man shot LaVaughn in the shoulder blade. (Trial Transcript at 140-44).

Nicole Anderson, Theresa Allen's daughter, was in her own bedroom watching television when "a man camp [sic] up . . . and held a gun up to me . . .' (Trial Transcript at 110).  Nicole Anderson also testified that another man was lurking near a linen closet but that she could not see his face.  (Id.).  Also present in the room were Marcus Allen, Nicole's younger brother, and her infant son Dion Anderson.  The intruder, whom Nicole identified [both at trial and at the coroner's inquest[1]] as the defendant, ordered her to lie facedown and then relieved her of her jewelry.  While in this position Nicole heard the sound of gunshots.  At this point, Nicole got up from the floor, telephoned the police and fled from the house with her child in her arms.

Theresa Allen stated while she was in the bedroom with Baskin, she heard someone coming up the stairs and then heard gunshots (Trial Transcript at 49). Then, according to Theresa Allen, a well-dressed black man entered her bedroom, and then shot at Baskin 2 or 3 times.  (Trial Transcript at 50).  The assailant then fled the scene.  Theresa Allen subsequently identified the assailant as being the defendant [at least twice, once in a photographic array, and also at trial[2]].

Dkt. [52-10] at 5 to 6 (indenting of paragraphs added).   In addition to the positive identifications

of Petitioner as the perpetrator, there was other overwhelming circumstantial evidence that

---

[1]  Dkt. [51] at 32.

[2]  Dkt. [51] at 31-32.

Petitioner was the perpetrator.   In the course of its PCRA opinion addressing an ineffectiveness

claim, the Superior Court noted the following:

> [Appellant] could not have been prejudiced by this absence of this cumulative testimony.  This is particularly true given the overwhelming circumstantial evidence presented in this matter that placed [Appellant] at the scene of the crime. [Appellant] was positively identified by two victims as the person who entered [their] residence, armed with a gun[,] demanding jewelry and other valuables.  A briefcase that several witnesses identified as belonging to [Appellant] both from its general appearance as well as because it bore a distinctive sticker, [i.e., a AAA sticker,] was found at the scene.  The briefcase contained documents related to a political campaign which bore the signature of persons who were willing to volunteer for that campaign.  Two of the people who signed the documents, Christine Barbee and Sandra Roberts, identified their signatures on those documents[.] [Notes of Testimony Trial, 4/4/90, at 220, 226].  The briefcase also contained a photo identification card for [Appellant]. [**Id.** at 206].  Fingerprints lifted from three separate documents found in that briefcase matched [Appellant's] known prints. [**Id.** at 333].
>
> In addition, at the approximate time of the [crime], a witness who lived near the Allen residence [the scene of the crime] saw a man walking in the direction of the Allen home carrying a briefcase bearing an AAA sticker.  The man was dressed in a suit and [was] wearing a baseball cap.[3]  He was walking with another man who also wore a baseball cap. [**Id.** At 165].  Another witness from the neighborhood also saw a man walking towards and entering the Allen residence around 2:30 p.m. on May 13, 1990.  He [i.e., the man walking] was wearing a suit and a blue baseball cap [and was] carrying a briefcase accompanied

---

[3]  The Commonwealth presented evidence that this baseball cap was in fact a promotional cap distributed by the Port Authority Transit ("PAT") for its employees.  Petitioner's girlfriend, who lived with Petitioner, testified at his trial and gave evidence that she was employed by PAT and that several days prior to the shooting, she was issued a blue baseball cap with the words "Hats Off to PAT Transit Team."  She testified that she took the cap home with her but since around the time of the shooting, she has not been able to find the cap. Dkt. [51] at 29.  This is significant because a search of the scene of the house where the murder and burglary took place revealed a blue baseball cap with the lettering that read "Hats Off to PAT Transit Team."  Dkt. [51] at 29.  In addition, a pair of glasses were found outside the house.  Id.  At trial, Dr. McVay, an ophthalmologist and expert, testified that he saw Petitioner once on March 7, 1988, and gave Petitioner a complete eye exam and determined that Petitioner was severely nearsighted.  Dr. McVay said Petitioner had two separate prescriptions: 1) reading glasses to be used when Petitioner was wearing contact lenses to see far, and 2) glasses to be used without the contact lenses in order to see far.  Dr. McVay testified that the glasses found at the scene of the shooting were the same prescription as the prescription given to Petitioner for the glasses to be used with the contact lenses [i.e., the reading glasses].  Dr. McVay further testified that on June 6, 1988, Petitioner contacted him for a duplication of the prescription.  Dkt. [51] at 31.

> by another man.  He [i.e., the witness] said that they entered the residence without knocking.  [*Id.* at 174-75].  A third neighbor saw a man wearing a brown suit run from the direction of the Allen residence ...  .... [*Id.* at 2169-70, 172].  She did not report seeing him carrying anything.  Although these witnesses could not identify [Appellant] as the man they saw that afternoon, their description of his appearance and what he was wearing was consistent with the description provided by the victim [apparently meaning Theresa Allen] who later identified [Appellant] from a photographic array and in court.  Moreover, their observations of him going to the Allen residence accompanied by another man [and] carrying a briefcase and wearing a blue baseball cap and then running from that area, alone without the cap or the briefcase is compelling circumstantial evidence that he was present at the Allen residence and then left,, leaving behind the . . . hat and the briefcase.

Dkt. [52-10] at 36-37 (indenting of paragraphs added).

Petitioner filed a direct appeal, represented by the same attorney who represented him at trial, Dkt. [52-10] at 34, and the Superior Court affirmed, Dkt. [52-4] at 2 to 28, the trial court's denial of relief.  Dkt. [51-5] at 34 to 42.   Thereafter, on or about January 19, 1996, Petitioner filed a pro se PCRA petition, whereafter counsel was appointed but then was later permitted to withdraw in or about January 8, 1997, without ever having filed an amended PCRA petition.  Due to an oversight, new counsel was not simultaneously appointed and the pro se PCRA petition languished for several years.   In May 2000, the PCRA court entered an order directing Petitioner to inform the court how he wished to proceed.  Petitioner indicated he wanted new counsel to be appointed.  New counsel was appointed, who eventually filed a no merit letter and a petition to withdraw.  In September 2002, the PCRA court issued two orders, one a notice of intent to dismiss the PCRA petition and the second order granted the attorney leave to withdraw.  On October 9, 2002, Petitioner filed a response to the court's notice of intent to dismiss.  Nothing further occurred on the docket until July 18, 2005, when the PCRA court dismissed the PCRA petition.

4

Meanwhile, on October 26, 2004, the Petitioner filed the instant habeas petition, apparently asking, inter alia, that exhaustion of his state court remedies be excused based upon the delay of the PCRA court in adjudicating his pro se PCRA petition.   The Court ordered that the petition be served and that the Respondent file an answer.  Dkt. [2].   After receipt of the answer, the Court ordered on July 15, 2005, that exhaustion would not be excused but that monitoring of the state court proceedings would be commenced by this Court and that the Respondent was to file monthly status reports indicating the progress of the case in the state courts if any.   Petitioner appealed that order to the District Judge, who eventually affirmed.  Dkt. [14].  Unbeknownst to this Court, and somewhat serendipitously, the PCRA court on July 15, 2005 denied the PCRA petition but that order was not entered on the state court docket until July 18, 2005.  The District Judge, in denying Petitioner's appeal and affirming the undersigned's order which did not excuse exhaustion but did require monitoring of the state court proceedings, noted the fact that the PCRA court had denied the PCRA petition during the pendency of the habeas proceedings in this Court.

Back in state court, Petitioner filed an appeal of the PCRA court's denial of relief.  After an appeal to the Superior Court and a remand of the case from that Court back to the PCRA trial Court, Petitioner was eventually ordered by the PCRA Court to file a Statement of Matters Complained of on Appeal.  Dkt. [52-9] at 29 - 30.   Petitioner filed his statement.  Dkt. [52-9] at 31 to 35.  Petitioner filed a supplemental statement as well.  Dkt. [59-2] at 37 to 42.  The PCRA court filed its opinion in support of its denial of the PCRA petition.  Dkt. [52-10] at 1 to 21. Petitioner did not file a new brief on appeal to the Superior Court but apparently relied upon the brief he had filed in the Superior Court on his first appeal, which was before the Superior Court

5

had ordered a remand. Dkt. [52-10] at 24 n.5.  Hence, Petitioner's brief to the Superior Court and

the issues he raised therein are available at Dkt. [52-8].  On October 24, 2007, the Superior Court

affirmed the denial of relief.  Dkt. [52-10] at 22 to 40.  On December 13, 2007, we received the

last status report from the Respondent indicating that Petitioner did not file a Petition for

Allowance of Appeal in the State Supreme Court and that the time for doing so had run.  Dkt.

[44].

Consequently on December 20, 2007, we ordered the Petitioner to inform us how he

wished to proceed.  Dkt. [45].  Petitioner indicated that he wanted to file an amended habeas

petition.  Dkt. [46].  Petitioner filed his amendment to the original habeas petition, which

amendment merely added two issues to the originally filed habeas petition.  Dkt. [48].  Hence the

operative petitions are Dkt. [1] and Dkt. [48].  The Respondent was directed to file a new answer.

Dkt. [49].  The Respondent complied.  Dkt. [51] & [52].

The petition is ripe for disposition.   The claims that Petitioner raises are as follows:

Ground One: Petitioner submits that he filed his Post Conviction Relief act
petition in the Clerk of Courts Office of Allegheny County on January 16, 1996.
He avers that there are not available to him corrective remedies in that trial court
which over the time-frame of 8 years and 10 months has failed and refused to
adjudicate the meritorious issues put before it but had prejudicially exercised
inordinate delay.

 [Dkt. [1] at unnumbered p. 6]

Ground Two: Petitioner submits that the trial/PCRA judge denied and deprived
him of his constitutional right to retain private counsel to both defend against the
contrived charges against him as well as to prosecute his appeal or post conviction
initiatives, in violation of his rights pursuant to the Sixth and Fourteenth
Amendments to the U.S. constitution.

[Id., at unn. 8]

Ground Three: The prosecution's fabrication of evidence and the use of perjured testimony to contrive his conviction.  In this regard, he submits (a) that the trial prosecutor suborned perjured testimony from chief prosecution witness Theresa Tata Allen when she testified that she was on the telephone talking to one Reginald McGlory when the decedent [i.e., Douglas Baskin] came into her bedroom and demanded gold and money.  (b) this testimony was subordinated [sic] false testimony in light of the fact that her initial statement to the Allegheny County detectives was that she was sleeping in her bed and was awaken[ed] by the decedent who demanded her gold, etc.  (c) This concealed, initial statement by Allen was not disclosed to defense and was a clear violation of the Brady rule, as well as the mandatory discovery rule of the Pa. Rules of Criminal Procedure.

[Id., at unn.10]

Ground Four: the trial judge was partial, prejudicial and unconscionably abusive in the exercise of his discretion . . . while unlawfully refusing to charge the jury with and [sic] Alibi Instruction!  Moreover, the "inter alia" asserted at the end of this issue references the Accomplice Liability Instruction the judge charged the jury with which was unlawfully [sic] and prejudicial.  In this regard, he submits that (2) [sic] the trial judge instructed the jury with the following purported Alibi Instruction (N.T. p. 472): . . . .  However, when an alibi defense is raised[,] a charge comparable to the suggested instruction (Alibi Instruction from Pennsylvania Suggested Standard Criminal Jury Instructions 3.11) is needed because (i) a failure to prove the defense might be taken by the jury as a sign of the defendant's guilt and (ii) alibi is a "substantive defense." General instructions on the Commonwealth's burden of proving each element of the crime beyond a reasonable doubt, the absence of the burden of proof on the defendant and assessing the credibility of witnesses are not adequate. . . .

And (b), he submits that the jury came back to the court with regard to an accomplice question.  The court's instructions (NT. Pp. 484-487) was [sic] charged with language which inarguably eviscerated and/or negated the instruction as to the "defendant not being present" proffered to the jury as a surrogate to an actual alibi instruction and charge.  In this connection, the court charged the jury with the following: . . . .

And (c), he submits that the jury posed another question to the judge respecting Second Degree Murder (N.T. pp. 486 & 487) and was proffered the following erroneous and unlawful instructions, in pertinent parts, as follows: . . . . [Essentially as to sub claim c, Petitioner is arguing that the instruction given permitted the jury to find Petitioner guilty of second degree murder on the basis that either Petitioner or an accomplice of Petitioners (apparently, other than the decedent, Mr. Baskin) killed Mr. Baskin but that there were only two people asserted by the prosecution to have been involved in the crimes, namely Petitioner and Mr. Baskin, and so permitting liability for second degree murder against

Petitioner based upon an uncharged accomplice liability theory deprived
Petitioner of a fair trial].

[Id., at unn. 10 to 13].

Ground Five: counsel for defendant deliberately and knowingly failed to render
effective assistance owing to a collusion with the police and prosecutor of case . . .
in the following instances:
    (a) failed to call alibi witness John Duncan to testify that the defendant
was in his presence in Pittsburgh about 45 minutes or a half an hour prior to the
killing of Mr. Baskin at 3:00 p.m. in Monroeville, Pennsylvania . . .  (b) failed to
object to the admission of irrelevant and immaterial testimony of a witness from a
tele-communication firm who testified that defendant was fired from that firm; (c)
failed to object to the admission of Port Authority Cap (one of 68,000 distributed)
that was wholly irrelevant to any matter apposite to the crime; (d) failed to object
to the admission of Port Authority Police Chief R. Ehland's testimony, which was
wholly hearsay with regard to another person in that authority distributing such
caps. . . (3) [sic] failed to raise espousal [sic] privilege when the prosecutor called
defendant's wife to testify for the prosecution about a Port Authority promotional
cap . . . (f) failed to demand mandatory discovery from the prosecution after
defendant alerted counsel that statements elicited and gathered by the Allegheny
county Police from Chief Prosecution witness Theresa T. Allen, Dr. Lloyd Bell
Rasuki Gaskin (brother of the deceased) and other family members, three women
employed at the Port Authority, et al., were exculpatory in nature and character . .
. and (g) failed to attack the unlawful and criminal acts of the prosecution . . . .

[Id., at unn. 13 to 14]

Ground Six: That the prosecutor – in conspiracy with the case police and PAT
police Chief, et al., – committed prosecutorial misconduct by the following: (a)
fully knowing that the bi-focal eye glasses presented to the jury was a contrivance
in that she [i.e., the prosecutor] knew that the defendant never wore such glasses
but colluded with the police to manufacture such evidence so as to be congruent
with her theory that defendant killed his accomplice Baskin by error because he
could not see – which was a theory of the prosecution – and (b) manufactured a
yellow glove that was wholly immaterial to the crime or pertinent in any respects
but so presented in order to deceive the jury that some probative value existed in
same; (c) failed to provided [sic] mandatory discovery with respects [sic] to the
initial statement given by witness Allen, the statements give by the Baskin
(deceased) father, brother, sister and other family members which imported their
intractable belief that the defendant did not kill their brother, son and relative, as
the statements of Dr. Bell and others who advised the police that the Jesse Jackson
Campaign sign-up sheets found in a brief case in the Allen's home and signed by

8

each were not solicited by "Br. Ralph" (defendant) [i.e., Petitioner] but by some other member of the campaign committee; (d) the trial prosecutor unlawfully concealed material evidence favorable to this accused that was found in the brief case allegedly discovered near the door of the Allen's home which the prosecutor attributed to defendant because 4 of the 58+ sign-up sheets allegedly bore his latent fingerprints; (e) the prosecutor presented the brief case before the trial jury as being owned by one, witness Smithson, and called her to the witness stand to so testify when the brief case was unremarkable, common and merely observed by Ms. Smithson on a table, closed and without identification markings in any fashion.

[Id., at unn. 14 to 15]

Ground Seven: defendant was deprived of a fair and impartial trial, equal protection and due process of law by the trial judge in the following manner (a) allowing the prosecutor to use a false statement by the testifying Allegheny Police Detective that defendant's daughter told him that defendant had a gun in the home while failing to render curative instructions to the jury; (b) allowing the prosecutor to present PAT Chief Ehland to testify about manufactured evidence – a PAT cap – when no chain of custody or authentic verification of such testimony was shown while also being immaterial to the crime and wholly prejudicial; (c) failed to give the appropriate alibi instruction, accomplice liability instructions as well as failed to render a specific intent to kill instruction to the jury in all such instances.

[Dkt. [1] at unn. 15 to 16]

Issue 8: That, Petitioner was acquitted by his trial jury of the Criminal Information charges of Carrying a Firearm, Violation of the Uniform Firearms Act (discharging a weapon), robbery (the taking of three female rings), and Aggravated Assault and Batter [sic] (on a police officer in the performance of his duty). As a consequence, he avers that he could not have shot and killed Decedent and, since a criminal information for the charge of conspiracy was not charged, could not have been liable or accountable for the decedent's death. So, this inconsistent verdict requires by law, a verdict of not guilty.

[Dkt. [48] at 1 to 2]

Issue 9: That, Petitioner avers that both the PCRA Court, as well as the Superior Court panel-of-case, deliberately failed to adjudicate the issues set forth in Petitioner's PCRA petition, the appeal to the Superior Court from the PCRA denial as advanced in his Brief for Appellant. . . . .

[Id., at 2].

II.     Discussion

As to Ground One, to the extent that Petitioner sought to have the exhaustion requirement excused, we have already denied that remedy and instead chose to monitor the state court proceedings, which proceeded in such a way that excusing the exhaustion requirement was not called for.  To the extent that Petitioner seeks to raise the delay of the state courts in adjudicating his PCRA petition as an independent ground providing a basis for the issuance of the writ of habeas corpus, he simply may not do so as errors during the state court post conviction process simply do not afford a ground for relief in habeas.  Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir. 1998)("The federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's *collateral* proceeding does not enter into the habeas calculation. . . . Federal habeas power is 'limited ... to a determination of whether there has been an improper detention by virtue of the state court judgment.'");  Bryant v. Maryland, 848 F.2d 492, 493 (4th Cir. 1988); Nichols v. Scott, 69 F.3d 1255, 1275 (5th Cir. 1995) ("An attack on a state habeas proceeding does not entitle the petitioner to [federal] habeas relief in respect to his conviction, as it is an attack on a proceeding collateral to the detention and not the detention itself.") (internal quotation marks omitted); Roe v. Baker, 316 F.3d 557, 571 (6th Cir. 2002) ("relief may not be granted to a habeas petitioner for alleged deficiencies in a state's post-conviction procedure"); Jolly v. Gammon, 28 F.3d 51, 54 (8th Cir. 1994).

As to Ground Two, again, to the extent that he raises the issue of being wrongfully denied counsel of his choice **during the PCRA process** because the state trial and PCRA court refused to order the return of what he alleged to be his property, in the form of three rings, such a claim is

not cognizable herein.  Hassine.  To the extent that he raises this issue as one of trial court error,

he is not entitled to relief because he has not carried his burden to show that the state courts'

adjudication of this claim is contrary to or an unreasonable application of then extant Supreme

Court precedent.  In addressing this issue, the Superior Court essentially held that Petitioner did

not make a sufficient showing that he was truly the owner of these rings as opposed to them

being, in fact, the rings stolen from the home the day of the burglary and noted that "Appellant

has made no offer of proof that the rings do indeed belong to him, rather than to the burglary

victim and the PCRA court has not ruled on Appellant's claim of ownership." Dkt. [52-10] at

29.  Petitioner has cited no Supreme Court precedent nor has he even argued that such a

disposition is contrary to or an unreasonable application of extant Supreme Court precedent, as is

his burden.[1]  Downing v. Del Papa, 145 Fed.Appx. 578, 580 (9th Cir. 2005)("Downing fails to

**argue** how the Nevada Supreme Court's judgment resulted in a decision that was contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States")(emphasis added); Anderson v. Secretary for Dept. of

Corrections, 462 F.3d 1319, 1325 (11th Cir. 2006)("Petitioner had not met his burden of showing

the state courts' decisions were 'contrary to' or 'an unreasonable application of ... clearly

established Federal law, as determined by the Supreme Court of the United States.'"); Sepulveda

v. U.S., 330 F.3d 55, 66 (1st Cir. 2003) (AEDPA requires state "petitioners to bear a different

burden; they must demonstrate that the state court's adjudication of the claim 'resulted in a

decision that was contrary to, or involved an unreasonable application of, clearly established

---

[1]We note that in his brief filed on appeal to the Superior Court, Petitioner similarly failed to cite a single case to the Superior Court in the argument section of his brief dedicated to this issue.  Dkt. [52-8] at 12 to 13.

Federal law, as determined by the Supreme Court of the United States.'"); Peterson v. Krysevig, Civ. A. No. 07-947, 2008 WL 4372940, at *8 (W.D.Pa., Sept. 22, 2008)("it is petitioner's burden to prove the state courts' disposition of a federal claim is either contrary to or an unreasonable application of clearly established federal law.") (citing Matteo v. Superintendent, SCI-Albion, 171 F.3d 877, 888 (3d Cir. 1999)(en banc)).  For this reason alone he fails to show that he merits relief under AEDPA.

Indeed, Petitioner argues this case as if it were on direct appeal and as if this Court sat as an appellate court to the state courts.  In fact, AEDPA provides the relevant standards by which a federal court is to conduct its review in federal habeas proceedings.  Those standards require that the habeas Petitioner establish that the state courts' adjudication of his claims were either contrary to or an unreasonable application of Supreme Court precedent.  Hence, based on his failure to even argue the AEDPA standards, Petitioner fails to establish entitlement to relief under AEDPA.

In Ground Three, Petitioner complains of the testimony that Theresa Allen gave at his trial, wherein she said she was talking on the phone in her bed when Baskin came into her room to rob her.   He complains that she had previously given an inconsistent statement saying that she was asleep.  Petitioner further complains that this prior inconsistent statement was withheld from his defense in violation of the Brady rule and that the prosecutor suborned the trial testimony of Ms. Allen.   The PCRA trial court addressed this issue in its opinion, essentially holding that the alleged inconsistency in Ms. Allen's testimony was insignificant and immaterial, and that such an inconsistency does not establish that the whole of her testimony was false.  The PCRA trial court also held that Petitioner's counsel did have this alleged inconsistent statement and even used it at

trial to attempt to impeach Ms. Allen.  Dkt. [52-10] at 7 to 8.

To the extent that Petitioner is raising this as a prosecutorial misconduct issue, the Superior Court found that Petitioner waived this issue because it could have been brought on direct appeal but was not.  Dkt. [52-10] at 33.[2]  The Respondent pointed out that this issue was procedurally defaulted, i.e., decided by the State Superior Court on independent and adequate state law grounds.  Dkt. [51] at 53.    Pennsylvania applies a rule of waiver in multiple contexts. An issue not raised on direct appeal is waived.  Commonwealth v. Mitchell, 445 A.2d 721, 723 (Pa. 1982)(issues not raised on direct appeal are waived).  As the Superior Court noted, Petitioner never raised the issue of prosecutorial misconduct in his direct appeal to the Superior Court.[3]  See Dkt. [52-10] at 33. Nor did he do so in his Petition for Allowance of Appeal ("PAA") to the Pennsylvania Supreme Court.[4]  Petitioner has not even argued that the state procedural rule of waiver for failing to raise an issue on direct appeal is inadequate or not independent.  See, e.g., Tillery v. Horn, 142 Fed.Appx. 66, 68 (3d Cir. 2005) ("Tillery has not furnished any argument or evidence germane to the adequacy inquiry.").  Nor has Petitioner argued any other reason to excuse the procedural default, as is his burden.  Perry v. Diguglielmo, Civ. A. No. 06-1560, 2008 WL 564981, at *12 (W.D.Pa., Feb. 29, 2008) ("Moreover, notwithstanding the fact that the Respondents invoked the procedural default defense, Petitioner failed to allege, as is his burden, either cause or prejudice for the procedural default. . . .  In addition, Petitioner fails to allege a

---

[2]  Essentially, if Petitioner had wanted to bring this issue in the PCRA proceedings, he should have cast it as one of ineffective assistance of trial and appellate counsel for failing to raise the issue of prosecutorial misconduct.

[3]  See Dkt. No. [51-6] at 1 to 45 & No. [51-7] at 9 to 25 (Petitioner's brief on direct appeal before Superior Court).  See also Dkt. [51] at 11 to 12 (quoting issues raised on direct appeal).

[4]  See Dkt. [52-5] at 17 (PAA).  See also Dkt. [51] at 12 to 13 (quoting issues raised in PAA).

13

miscarriage of justice as is his burden in order to overcome the procedural default.")(footnote omitted).  Accordingly, we find this issue to be procedurally defaulted.

In the alternative, even if not procedurally defaulted, and even if we were to address this issue on the merits, we would adopt the analysis of the issue made by the PCRA trial court as our own and deny the claim on the merits.[5]  See Dkt. [52-10] at 7 to 8.

We next address Petitioner's Ground Four, which alleges errors on the part of the trial judge, including an alleged failure to give an alibi charge to the jury and the improper giving of an accomplice instruction.   In the PCRA appeal, the Superior Court held this issue to have been waived because it was not raised on direct appeal.  Dkt. [52-10] at 12.  The Respondent pointed out that Ground Four was procedurally defaulted.  Dkt. [51] at 57 to 58.  For the same reasons given above with regards to Ground Three, we find this issue procedurally defaulted and find that Petitioner failed to carry his burden to show that such procedural default should be excused.

In an apparent alternative holding, the Superior Court also found the issues to be meritless based upon the PCRA trial Court's reasoning.  See Dkt. [52-10] at 39 n.10 ("Finally, the PCRA court addressed the merits of Appellant's issued related to the jury instructions in its opinion.  (Trial Court Opinion at 8-9).  The PCRA court's analysis is supported by the record and explains that Appellant is not entitled to relief on the merits of his allegations.").  Among the

---

[5]  In doing so, we are not applying the deferential standards of AEDPA to the PCRA trial court's analysis and determining that the PCRA trial Court's analysis was not contrary to or an unreasonable application of federal Supreme Court precedent.  See e.g., Thomas v. Horn, 570 F.3d. 105  (3d Cir. 2009)(holding that if a state trial court addresses an issue on the merits but the state appellate court finds the issue to be waived under state law, the federal habeas courts may not look through the state appellate court's finding of waiver and conduct a contrary to or unreasonable analysis of the state trial court's disposition on the merits). Rather, in conducting a de novo review of this claim, we are merely adopting as our own the PCRA trial court's analysis of this issue.

other conclusions by the PCRA trial court was the fact that the trial judge did give the standard

alibi instruction although only at the conclusion of the jury instructions after Petitioner's Defense

counsel pointed out that such an instruction had not been given.  Dkt. [52-10] at 8 to 9.

However, it appears that Petitioner now argues not that the alibi instruction was not given but

that it was defective because the instruction did not also instruct the jury that even if they

disbelieve the alibi, such should not be taken to be a sign of Petitioner's guilt.  Dkt. [1] at unn. p.

11.   To the extent that Petitioner is raising this distinct claim as an issue herein, we find that

because this precise issue was never presented to the state courts through one complete round of

state proceedings, i.e., at both a trial level and an appellate level, and from the record, it appears,

indeed, **never** to have been raised in any of the state court appellate briefs,[6] the issue is waived

under state law and procedurally defaulted under federal law.  Accordingly we find the issues in

Ground Four procedurally defaulted. Nor does Petitioner have any apparent cause for such

default, nor could he successfully press a miscarriage of justice exception here on this record.

We next turn to Ground Five.  Petitioner claims his trial counsel was ineffective for (a)

failing to call an alibi witness in the person of John Duncan; (b) failing to object to testimony that

Petitioner was fired from a job; (c) failing to object to the admission of the PAT baseball cap; (d)

failing to object to hearsay testimony about the number of such PAT caps distributed; (e) failing

to raise spousal privilege to prevent Jeanette Adams from testifying concerning Petitioner; (f)

failing to demand discovery and (g) failing to object to prosecutorial misconduct.

The Superior Court addressed sub-issue (a) of ineffectiveness by finding that Mr.

---

[6]  See Dkt. [51-6] at 1 to 45 & [51-7] at 1 to 25 (direct appeal brief); Dkt. 52-8 at 1-29 (PCRA appeal brief).

Duncan's testimony was merely cumulative of another alibi witness and that in light of the

overwhelming evidence of Petitioner's guilt, the absence of such cumulative evidence would not

have prejudiced Petitioner, with the Superior Court adopting the rationale of the PCRA trial

court. Dkt. [52-10] at 35 to 37.  Petitioner has not carried his burden to show that the foregoing

adjudication of this claim was contrary to or an unreasonable application of United States

Supreme Court precedent.  Hence, this issue does not merit Petitioner relief.

The Superior Court went on to find that Petitioner only presented three issues of

counsel's ineffectiveness to it in his appellate brief.  See Dkt. [52-10] at 35 to 39.  The Duncan

alibi witness being one of the three.  The other two claims of counsel's ineffectiveness were for

failing to object to the allegedly defective jury instruction on alibi and the giving of the

instruction on accomplice liability.  The Superior Court found both claims to be waived because

although they were raised in the appellate brief, they were not raised in the Rule 1925(b)

statement. Dkt. [52-10] at 38.   In the alternative, the Superior Court found that these two issues

of ineffectiveness were not meritorious because the PCRA court addressed directly the issues of

the alleged wrongfulness of the two jury instructions and found the claims concerning the

instructions to be meritless.  Hence, if Petitioner's claims about the wrongfulness of the

instructions were not meritorious, then counsel could not have been ineffective for failing to raise

meritless objections to the instructions.  Dkt. [52-10] at 39 n.10. ("Finally, the PCRA court

addressed the merits of Appellant's issue related to jury instructions in its opinion. . . .  The

PCRA court's analysis is supported by the record and explains that Appellant is not entitled to

relief on the merits of his allegations."). Werts v. Vaughn, 228 F.3d 178, 202 (3d Cir. 2000)

("counsel cannot be deemed ineffective for failing to raise a meritless claim").

Petitioner did not present the remaining issues, i.e., Issues 5(b)(c)(d)(e) or (f), in his appellate brief to the Superior Court.  See Dkt. [52-8] at 26 to 29 (raising only three issues of ineffectiveness).  Hence, we find these issues to be procedurally defaulted for not having been raised on appeal before the Superior Court.  It is true that the Respondent did not raise the procedural default bar to these issues but, rather, relied upon the PCRA trial court's disposition of these issues and contended that the PCRA trial court's disposition of these issues did not meet the AEDPA standard for the grant of relief.  Dkt. [51] at 63 to 71.  Although the Respondent did not raise the bar of procedural default as to these issues, this Court retains discretion to do so sua sponte.  Sweger v. Chesney, 294 F.3d 506, 520-22 (3d Cir. 2002).[7]  Nor does Petitioner have cause to excuse this procedural default as he was proceeding pro se when he filed his appeals brief.  Nor on this record could Petitioner show a miscarriage of justice.  Hence, these issues are procedurally defaulted.

In the alternative, even if we were to address these issues on the merits, we would agree with the Respondent's argument that Petitioner has failed to show that the PCRA trial court's adjudication of these issues was either contrary to or an unreasonable application of then extant

---

[7]  As the Court in Sweger held:

We retain this discretion [to *sua sponte* address and rely on an issue of procedural default never raised by the respondent] because the doctrine of procedural default, while not a jurisdictional rule, 'is grounded upon concerns of comity between sovereigns and often upon considerations of judicial efficiency.' ... 'Because these concerns substantially implicate important interests beyond those of the parties, it is not exclusively within the parties' control to decide whether such a defense should be raised or waived.'

Sweger, 294 F.3d 520 n.13.

federal Supreme Court precedent.[8]

We turn next to Ground Six. Here, Petitioner claims that the prosecutor committed

prosecutorial misconduct by (a) presenting contrived evidence regarding his eyeglasses; (b)

presenting a yellow glove found at the scene of the crime and attempting to link it to a glove

found at Petitioner's home; (c) failing to provide mandatory discovery; (d) unlawfully concealing

evidence favorable to Petitioner and (e) presenting a briefcase as being formerly owned by a

witness Smithson, who testified she gave that briefcase to Petitioner, when the briefcase was

common and merely observed by Ms. Smithson on a table closed and without any identifying

markings on it.  On PCRA review, the Superior Court found the issues of prosecutorial

misconduct, which Petitioner raised in his brief before that court, see Dkt. [52-8] at 16 to 20,

waived under state law because they could have been raised on direct appeal and were not.  Dkt.

[52-10] at 33.  To the extent that the issues raised under Ground Six of the habeas petition are the

same as the issues raised by the Petitioner in his brief before the Superior Court on PCRA

review, we find the claims to be procedurally defaulted based upon the state Superior Court's

waiver determination.  An issue not raised on direct appeal is waived.  Commonwealth v.

Mitchell, 445 A.2d at 723 (Pa. 1982)(issues not raised on direct appeal are waived).  As the

_____

    [8]  We distinguish Thomas v. Horn, 570 F.3d. 105  (3d Cir. 2009) from this case on the following
basis.  In Thomas v. Horn, the trial level court addressed an issue on the merits, whereas the appellate
level court held the issues to have been waived.  The federal district habeas court looked through the
state appellate court's procedural holding as to the issue and applied AEDPA's deferential review to the
state trial court's merits holding.  The Thomas v. Horn court held this to be error.  Unlike Thomas, the
Superior Court here did not find the issues which the PCRA trial court addressed on the merits to have
been waived because Petitioner did not present those very issues to the Superior Court.  Hence, there is
no undoing by the Superior Court of the PCRA trial court's holdings as to these issues.  Even if it were
otherwise and Thomas would preclude this Court from applying the AEDPA deference to the PCRA
court's disposition of these ineffectiveness claims, then, as an alternative holding, we simply adopt the
PCRA court's reasoning and disposition of these claims in our de novo review of them.  See Dkt. [52-10]
at 9 to 16 (PCRA Trial court opinion addressing these issues of ineffectiveness).

Superior Court noted, Petitioner never raised the issue of prosecutorial misconduct in his direct

appeal to the Superior Court.[9]  Nor did he do so in his PAA to the Pennsylvania Supreme Court.[10]

Petitioner has not even argued that the state procedural rule of waiver for failing to raise an issue

on direct appeal is inadequate or not independent.  See, e.g., Tillery v. Horn, 142 Fed.Appx. at 68

("Tillery has not furnished any argument or evidence germane to the adequacy inquiry.").  Nor

has Petitioner argued any other reason to excuse the procedural default, as is his burden. Perry v.

Diguglielmo, 2008 WL 564981, at *12.  Accordingly, we find these issues of prosecutorial

misconduct to be procedurally defaulted.

     To the extent that Petitioner did not raise the very same issues of prosecutorial

misconduct in his appellate brief to the Superior Court which he raises in his habeas petition

before this Court, we find such issues to be procedurally defaulted for failing to raise them to the

Superior Court in that brief.  Furthermore, Petitioner would have no apparent cause for such

default, nor, on this record, could he establish a miscarriage of justice.  While it is true that the

Respondent did not invoke the procedural default bar as to the claims of prosecutorial

misconduct but, rather, contended that the PCRA trial Court's disposition of these issues did not

meet the AEDPA standard for the grant of relief, we retain the discretion to rely upon the

procedural default bar sua sponte.  Sweger.

     In the alternative, to the extent not barred by Thomas v. Horn, we accept the

Respondent's invitation and find that Petitioner has failed to establish that the PCRA trial court's

---

[9]  See Dkt. No. [51-6] at 1 to 45 & No. [51-7] at 9 to 25 (Petitioner's brief on direct appeal before
Superior Court).  See also Dkt. [51] at 11 to 12 (quoting issues raised on direct appeal).

[10]  See Dkt. [52-5] at 17 (PAA).  See also Dkt. [51] at 12 to 13 (quoting issues raised in PAA).

disposition of the issues of prosecutorial misconduct was contrary to or an unreasonable

application of then extant federal Supreme Court precedent.   To the extent that Thomas v. Horn

would bar us from applying AEDPA's deferential standards to the PCRA Court's disposition,

then we adopt the PCRA trial court's analysis and disposition as our own in our de novo review

of these claims of prosecutorial misconduct.  See Dkt. [52-10] at 7 to 8 (addressing claim that

prosecutor knowingly presented false testimony by Ms. Allen and that the prosecutor withheld

the prior inconsistent statement of Ms. Allen concerning her being asleep from the defense); at

16 to 20 (addressing the remaining claims).

        In Ground Seven, Petitioner complains that the trial judge denied him a fair trial when he

(a) allowed the prosecutor to use a false statement from an Allegheny County police detective

that the daughter of his live-in girlfriend told the police detective that Petitioner had a gun in the

home and for failing to provide a curative instruction regarding this testimony; (b) allowed the

prosecutor to present the testimony of PAT Police Chief regarding the PAT baseball cap and (c)

failed to give appropriate alibi instruction, gave an accomplice liability instruction and failed to

give a specific intent to kill instruction to the jury.

        Issue 7(c), at least insofar as it relates to the accomplice liability instruction (which was

the only issue presented as trial court error in the brief to the Superior Court, see Dkt. [52-8] at

21 to 25),  was held by the Superior to have been waived because not raised on direct appeal.

Hence, this issue was procedurally defaulted, as explained above, due to Petitioner's failure to

raise it on direct appeal.  Although the Respondent argues that the PCRA trial court's disposition

of this claim was not contrary to or an unreasonable application of federal Supreme Court

precedent, Dkt. [51] at 54 to 60, the Respondent also argued in the alternative that Petitioner

procedurally defaulted this claim.  Dkt. [51] at 57 -58.  Accordingly, this Court finds this claim to

be procedurally defaulted and because Petitioner has not shown that such a procedural default

should be excused, the issue cannot afford any relief.   As to the other two  issues under 7(c), i.e.,

the alibi instruction and the permitting of the PAT police chief to testify about the number of

PAT baseball caps distributed, because these issues were not raised before the Superior Court in

the appellate brief, they were waived under state law and are procedurally defaulted under federal

law.  Even though the Respondent may not have argued this procedural default, this Court has

the discretion to raise and rely on such a procedural default and does so.  Sweger.  Moreover,

because there is no apparent cause for this procedural default nor could Petitioner show a

miscarriage of justice, this claim cannot be addressed on the merits by this Court.

In the alternative, to the extent that Thomas v. Horn permits, we find that the PCRA trial

court's disposition of these claims did not meet AEDPA's standards for the grant of relief.  To

the extent that Thomas v. Horn does not permit the application of AEDPA's standard, we adopt

the PCRA trial court's disposition of these claims as our own in our de novo review of them.

See Dkt. [52-10] at 7 to 9.

The foregoing reasoning – as to issues being procedurally defaulted for not being raised

in the PCRA appellate brief in the Superior Court – applies equally to Issue 7(a), which was not

apparently raised in Petitioner's appellate brief to the Superior Court during the PCRA

proceedings, but which was addressed on the merits by the PCRA trial court.  The Respondent

urges us to apply AEDPA's deferential standards to the PCRA trial court's disposition of these

two claims.  Accordingly,  Issue 7(a) is procedurally defaulted and/or does not merit relief

because (to the extent permitted by Thomas) Petitioner has not demonstrated that the PCRA trial

21

court's disposition meets the standard under AEDPA for relief, or, alternatively, if AEDPA does not apply (pursuant to Thomas), then we adopt as our own the PCRA trial court's disposition upon de novo review of issue 7(a).

As to Issue 7(b), the Respondent contends that the PCRA trial court's disposition of these claims was neither contrary to nor an unreasonable application of then extant federal Supreme Court precedents.  Dkt. [51] at 64 to 68 (addressing Issue 7(b)).  Respondent does not argue that this issue was procedurally defaulted.  We note, however, that it does not appear Petitioner raised this specific issue of trial court error before the Superior Court in his appellate brief during the PCRA proceedings.  See Dkt. [52-8] at 21 to 25.  Because he did not, Petitioner procedurally defaulted this claim and we may raise this procedural default sua sponte.  Sweger.  Given that Petitioner did not raise this issue before the Superior Court, the Superior Court did not address it and so did not undo the PCRA trial court's disposition of the claim.  Hence, to the extent that Thomas permits this Court to apply AEDPA's deferential standard as to the PCRA trial court's disposition of this claim, we do so and find that the PCRA trial court's disposition of this claim is not contrary to or an unreasonable application of then extant Supreme Court precedent.  To the extent that Thomas does not permit us to apply AEDPA's deferential standard as to the PCRA trial court's analysis and disposition, then in conducting our de novo review of this issue, we adopt the PCRA trial court's analysis and disposition of this issue as our own and deny relief based thereon.

Next, we consider Petitioner's two additional claims contained in his amendment to the original habeas petition.  Dkt. [48].  In Ground Eight, Petitioner argues that because he was acquitted by the jury of carrying and/or discharging a firearm, and acquitted of robbery (i.e., the

taking of three rings), Petitioner contends that he could not then have been convicted of second degree murder in the shooting of the decedent because the jury found Petitioner not guilty of firing a gun.  It appears that here Petitioner is arguing that the jury rendered inconsistent verdicts and as such, his second degree murder conviction cannot stand.  Dkt. [48] at 2 ("So, this inconsistent verdict requires, by law, a verdict of not guilty.").  Petitioner appeared to argue a similar issue in the state courts on direct appeal.  See, e.g, Dkt. [52-4] at 4 to 5 (Superior Court opinion listing issues raised on direct appeal, especially Issue (I)(d) & (e) and Issue II).  However, these arguments made on direct appeal concerned the sufficiency and weight of the evidence claims, and not, as here, an argument concerning the alleged inconsistency of the jury verdicts, which is a claim distinct from the claims asserting insufficiency and weight of the evidence.  See, e.g., City Light Cleaners of Williamsport, Inc. v. American Alliance Ins. Co., 112 Fed.Appx. 206, 207 (3d Cir. 2004)("[t]he issue before us is not one of inconsistent verdicts; it is one of sufficiency of the evidence.").  Indeed, the Respondent, apparently noting the similarity of arguments, relied, in the answer, upon the disposition of the Superior Court opinion on direct appeal which addressed the weight and sufficiency of the evidence arguments in order to address Petitioner's argument.  Dkt. [51] at 82 to 85.  Hence, to the extent that Petitioner relies upon the presentation of the arguments in his direct appeal to show that he presented the issue of inconsistent jury verdicts to the state courts, we find that he has procedurally defaulted the issue of alleged inconsistent jury verdicts because the inconsistent jury verdict claim is not the same as the insufficiency and/or weight of the evidence claims raised before the state courts on direct appeal.  Nor has Petitioner carried his burden to show that the procedural default should be excused.

However, it also appears that Petitioner did present the issue of the allegedly inconsistent jury verdicts to the state courts during the PCRA proceedings.  He presented this inconsistent jury verdict issue in the Rule 1925(b) statement, albeit the supplemental one, post remand from the Superior Court.  Dkt. [52-9] at 39, ¶ 11.  He also presented this issue to the Superior Court in his appellate brief during the PCRA proceedings, Dkt. [52-8] at 24 to 25.   Regrettably, it does not appear that the state court addressed this precise issue.  Hence, it falls to this Court in the first instance to address this precise issue.

First, we find that this issue of alleged inconsistent jury verdicts to be procedurally defaulted.  Petitioner could have and should have presented this issue on direct appeal.  He did not, even though he did present a somewhat related issue as to the sufficiency and weight of the evidence.  Because he failed to present this inconsistent verdict issue in his post trial motions, and/or on direct appeal, he procedurally defaulted this claim.  While he may have a claim of cause for doing so, namely, the alleged ineffectiveness of his trial and direct appeal counsel for not raising this issue, Petitioner never raised a claim of ineffectiveness of trial and/or direct appeal counsel for failing to raise the claim of allegedly inconsistent verdicts.  Hence this claim of cause is itself procedurally defaulted.  See, e.g., Edwards v. Carpenter, 529 U.S. 446, 453 (2000)(holding that "an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted").  Nor, on this record, can Petitioner succeed on a miscarriage of justice excuse.  Thus, this issue cannot afford Petitioner relief.

In the alternative, addressing this issue de novo, we find that it does not merit relief. Although not entirely clear, it appears that Petitioner is arguing that he was charged as a principal

in the shooting of Mr. Baskin, i.e., he was charged as being the actual shooter and there was no

jury instruction or evidence presented that Petitioner was guilty of the second degree murder as

an accomplice or conspirator.  The argument proceeds that if, indeed, Petitioner was the actual

shooter, then the jury necessarily found that he carried a gun because if he did not carry a gun,

how could he have shot the victim.  Then Petitioner's argument concludes that, because the jury

found him **not** guilty of the carrying a firearms charge, the verdict of guilt as to the shooting of

the victim and the verdict of acquittal as to the carrying a firearms violation are inconsistent.

See, e.g., Dkt. [52-9] at 39, ¶ 11 (perhaps Petitioner's most clear explanation of his position

appearing in the record).

By way of some factual background, we observe the following.  Petitioner was originally

charged with two firearms violations.  Dkt. [51-2].  At Count 4 he was charged with carrying a

firearms without a license.  At Count 5, he was charged with carrying a firearms after having

been convicted of a crime.  Count 5 was nolle prossed.  Dkt. [51] at 2, n.4.  At count 4, the

specific charge was that the "actor carried, without a license therefore as provided by Chapter 61,

Subchapter A of the Pennsylvania Crimes Code, 18 Pa. C.S. § 6101 et seq. a firearm, namely, a

.38 caliber revolver, concealed on or about actor's person, in violation of Section 6101 of the

Pennsylvania Crimes Code, Act of December 6, 1972, 18 Pa. C.S. § 6106."  Dkt. [51-2] at 49.

We first note Petitioner failed to establish that the verdicts are in fact inconsistent.  His argument

relies on the assumption that the jury found that he did not carry a firearm, which would be

inconsistent with the finding that he shot the victim.  However, this is not the necessary import of

the jury verdict of acquitting him of the carrying a firearms violation.  The jury may just as easily

have concluded that while the Commonwealth proved that Petitioner carried a firearm, the

Commonwealth failed to prove that Petitioner carried the firearm without having been licensed to do so.  See, e.g., Commonwealth v. Woods, 638 A.2d 1013, 1016 (Pa. Super. 1994)("We are cognizant that non-licensure is the essential element of the crime of carrying a firearm without a license, and that the Commonwealth has the burden of establishing this element beyond a reasonable doubt.").   In this light, it is apparent that the jury verdict is not necessarily inconsistent.  The jury could simply have concluded that although he carried a firearm, he was licensed to do so, or at the very least, the Commonwealth failed to prove that he was not licensed. At the very least, Petitioner fails to carry his burden to show that this was not the case, as would be required of him to carry his burden to show entitlement to relief.  A judgment of conviction carries with it a presumption of regularity in federal court.  Meyers v. Gillis, 93 F.3d 1147, 1151 (3d Cir. 1996)("On collateral attack. . . ., the state receives the presumption of regularity and all reasonable inferences.") (quoting Higgason v. Clark, 984 F.2d 203, 208 (7th Cir. 1993)); Sandoval v. Tinsley, 338 F.2d 48, 50 (10th Cir. 1964); Schlette v. California, 284 F.2d 827, 833-34 (9th Cir. 1960)("A conviction after public trial in a state court by verdict or plea of guilty places the burden on the accused to allege and prove primary facts, not inferences, that show, notwithstanding the strong presumption of constitutional regularity in state judicial proceedings that in his prosecution the state so departed from constitutional requirements as to justify a federal court's intervention to protect the rights of the accused.").  Given this presumption of regularity, it is petitioner's burden to establish, at the very least, by a preponderance of the evidence,[11] that his constitutional rights were violated.  Jones v. Vacco, 126 F.3d 408, 415 (2d

---

[11] To the extent that petitioner is challenging the factual determinations of the State courts, he has a burden to rebut the presumption of correctness of those factual findings by clear and convincing evidence.  28 U.S.C. § 2254 (e)(1).

Cir. 1997)("On a petition for a writ of federal habeas corpus, the petitioner bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated."). At best, the record is silent as to this issue and so Petitioner necessarily loses.  Higgason v. Clark, 984 F.2d 203, 208 (7th Cir. 1993) ("On collateral attack, a silent record supports the judgment; the state receives the benefit of a presumption of regularity and all reasonable inferences. . . . His [i.e., habeas Petitioner's] entire position depends on persuading us that all gaps and ambiguities in the record count against the state. Judgments are presumed valid, however, and *Parke* emphasizes that one who seeks collateral relief bears a heavy burden."); Robinson v. Smith, 451 F.Supp. 1278, 1284 n. 6 (W.D.N.Y. 1978)(on habeas review, the court stated that "In my own independent review of the record, I have resolved ambiguities against petitioner"); Patrick v. Johnson, NO. CIV.A. 3:98-CV-2291, 2000 WL 1400684, at *9 (N.D. Tex. Aug. 23, 2000)("whatever ambiguity exists in the record must be resolved in favor of the trial court's finding."). Here, Petitioner has failed to carry his burden to establish that the verdicts were necessarily inconsistent.

        Even if Petitioner had established that the jury verdicts were inconsistent, such would not warrant relief in federal habeas proceedings as inconsistent verdicts do not violate the federal Constitution.  United States v. Espinoza, 338 F.3d 1140, 1147 (10th Cir. 2003)("we reject Defendant's argument that the jury could not have convicted him as a principal on the armed-robbery count because it acquitted him of using a firearm during the robbery. We appreciate the appeal of this argument; it would seem inconsistent for the jury to conclude that Defendant was one of the armed robbers in the bank, while also concluding that he did not use or brandish a firearm during the robbery. There are sound reasons, however, not to concern

ourselves with the consistency of jury verdicts in criminal cases."). See also United States v. Powell, 469 U.S. 57, 69 (1984)("Inconsistency in a verdict is not a sufficient reason for setting it aside. We have so held with respect to inconsistency between verdicts on separate charges against one defendant, Dunn v. U.S., 52 S.Ct. 189, 284 U.S. 390, 76 L.Ed. 356"); United States v. Walker, 9 F.3d 1245, 1248 (7th Cir. 1993)("Walker ignores the well settled rule that an irreconcilable jury verdict does not warrant reversal of a criminal conviction."); U. S. ex rel. Hubbard v. Hatrak, 588 F.2d 414, 418-19 (3d Cir. 1978)("Appellant proposes two additional sources of authority for his due process contention: those cases holding that when two persons are charged with conspiracy, the acquittal of one requires an acquittal of the other, and those cases holding that the acquittal of a principal requires the acquittal of one charged with aiding and abetting. But the cases to which Hubbard refers do no more than interpret specific federal statutes. They do not address the question whether such interpretations are constitutionally compelled. Any suggestion that they are so compelled is dispelled by the settled rule that inconsistent verdicts in criminal cases are permissible."); United States v. Vastine, 363 F.2d 853, 855 (3d Cir. 1966)("A rational consistency in the verdicts of a jury on the separate counts of a single indictment is not required. Ibid. The reason for the rule appears to be predicated on special considerations relating to the peculiar role of the jury."). Accordingly, this issue affords Petitioner no relief even upon de novo review.

Petitioner's final claim is that "the PCRA Court, as well as the Superior Court panel-of-case, deliberately failed to adjudicate the issues set forth in Petitioner's PCRA petition, the appeal to the Superior Court from the PCRA denial as advanced in his Brief For Appellant." Dkt. [48] at 2. This issue, complaining as it does of events transpiring during the PCRA

proceedings simply raises no claim cognizable in federal habeas proceedings on which to base the grant of relief sought.  See Hassine.  Accordingly, this issue affords Petitioner no relief.

Accordingly, for any or all of the foregoing reasons, the petition is properly denied.  In like manner a certificate of appealability is properly denied because Petitioner has not made either a substantial showing of the denial of a constitutional right or shown that jurists of reason would disagree with the Court's procedural or substantive holdings.  See, e.g., Slack v. McDaniel, 529 U.S. 473 (2000); Walker v. Government of The Virgin Island, 230 F.3d 82, 89-90 (3d Cir. 2000).

An appropriate Order follows.

/s/ Amy Reynolds Hay
Chief United States Magistrate Judge

Dated: 25 August, 2009

cc:     Thomas J.R. Moore
        AP-2824
        SCI Graterford
        P.O. Box 244
        Graterford, PA 19426

        All counsel of record by Notice of Electronic Filing